```
1                    UNITED STATES DISTRICT COURT
                     MIDDLE DISTRICT OF TENNESSEE
2                        NASHVILLE DIVISION

3

4    UNITED STATES OF AMERICA      )
                                   )
5    VS                            )   No. 3:16-00043
                                   )
6    PAUL GRATTON                  )
     _____
7

8        BEFORE THE HONORABLE JOE BROWN, MAGISTRATE JUDGE

9             TRANSCRIPT OF ELECTRONIC RECORDING

10                      March 8, 2017

11   _____

12   APPEARANCES:

13   For the Government:     JOHN BENJAMIN SCHRADER
                             Asst. U.S. Attorney
14                           110 Ninth Ave S., Suite A961
                             Nashville, TN 37203
15

16   For the Defendant:      Pro Se

17                           DAVID M. HOPKINS
                             745 S. Church Street
18                           Suite 303
                             Murfreesboro, TN 37130
19

20   _____

21   PREPARED FROM ELECTRONIC RECORDING BY:

22   Roxann Harkins, RPR, CRR
     Official Court Reporter
23   801 Broadway, Suite A837
     Nashville, TN 37203
24   615.403.8314.
     roxann_harkins@tnmd.uscourts.gov
25
```

1           **I N D E X**

2     Government Witness

3
      **TODD STACY**
4
      Direct Examination By Mr. Schrader ..................7
5     Cross-Examination By Mr. Gratton ...................10
      Redirect Examination By Mr. Schrader ...............15
6

7     Defense Witness

8     **KIMBERLY HANEY**

9     Direct Examination By Mr. Gratton ..................19
      Cross-Examination By Mr. Schrader ..................21
10    Redirect Examination By Mr. Gratton ................27

11

12          **E X H I B I T S**

13    Defense No. 1....Statement dated 3-6-17 from  .....14
              John M. Byrnes, MD, Internal Medicine re:
14            Paul Gratton

15

16

17

18

19

20

21

22

23

24

25

1

2          The above-styled cause came to be heard

3   on March 8, 2017, before the Hon. Joe Brown,

4   Magistrate Judge, when the following proceedings were

5   had to-wit:

6          **TRANSCRIPT OF ELECTRONIC RECORDING**

7                          \* \* \*

8          THE COURT:  All right.  We're here on the

9   case of United States versus Paul Gratton.  You're

10  Mr. Gratton?

11         MR. GRATTON:  Yes, sir.

12         THE COURT:  Okay.  Mr. Gratton, you were

13  released on bond and I don't have a -- arrest warrant

14  then was issued by Judge Sharp, looks like yesterday,

15  charging you with failure to appear for a jury trial.

16  And the government's filed a motion for detention.  As

17  I understand the government's also filed a motion to

18  revoke the present bond.

19         MR. SCHRADER:  That's correct.

20         THE COURT:  All right.  So Mr. Gratton,

21  that's where we are.  My understanding is the matter's

22  set for trial on the charges in the morning.  Do you

23  have counsel in the matter or where are we with

24  counsel?

25         MR. GRATTON:  I have a man here who will

1     file papers at the moment is where I'm at, sir.

2           THE COURT:  And what is -- and what is

3     your status?

4           MR. HOPKINS:  Your Honor, I'm David

5     Hopkins.  I'm an attorney, I was appointed to

6     represent --

7           THE COURT:  Oh, you're elbow counsel.

8           MR. HOPKINS:  Elbow counsel.

9           THE COURT:  Oh, okay.

10          MR. HOPKINS:  Mr. Gratton is pro se,

11    Your Honor.

12          THE COURT:  Okay.  All right.  As I

13    understand it, Mr. Gratton, you terminated his

14    services as full-time attorney, and he's been

15    appointed to advise you but not to formally represent

16    you, if I understand correctly.  Okay.

17          MR. GRATTON:  Yes, sir.

18          THE COURT:  All right.  Well, case is due

19    to set tomorrow.  I would normally set a detention

20    hearing within three days, but the matter is set for

21    trial.  Do you want a detention hearing in the matter

22    or what?

23          MR. GRATTON:  Yes, sir, if you have time

24    for it.

25          THE COURT:  Okay.  Well, is the

1    government ready -- you ready now or do you want to do

2    it now?

3                    MR. SCHRADER:  Is it my understanding

4    that we set it three days from now like we do in the

5    ordinary course?

6                    THE COURT:  What's wrong with doing it

7    now?

8                    MR. SCHRADER:  Well, I'm happy to argue,

9    I guess, about detention, but I don't think we're in

10   position to be putting on any additional proof or

11   (inaudible) about that particular issue.

12                   THE COURT:  Well, I mean, he either

13   showed up or he didn't.  You got a witness that says

14   he showed up or he didn't for trial.

15                   MR. SCHRADER:  Sure.  And I think -- I

16   mean --

17                   THE COURT:  I'm just saying, as a

18   practical matter, the trial is going to start in the

19   morning.  If you've got a witness that's going to say

20   whether he did or didn't and then Mr. Gratton can

21   present whatever evidence he has as to why he didn't

22   appear.  And I'm going to -- I'm ready to rule.

23                   MR. SCHRADER:  Sure.  And I guess -- I

24   think if the Court can give me just a moment, I think

25   we can probably accomplish that.

1                THE COURT:  Sure.

2                MR. SCHRADER:  I guess my question would

3     be, does the fact that the Court issued a bench

4     warrant yesterday not suffice?  We're talking about

5     establishing probable cause that the defendant failed

6     to appear.  Judge Sharp issued a bench warrant

7     yesterday.

8                THE COURT:  Actually, technically issued

9     an arrest warrant.  Says here marshals commanded to

10    arrest him and bring him before a magistrate judge

11    without delay.  So they've brought him before a

12    magistrate judge without -- without delay apparently,

13    so -- and grounds for failure to appear for a jury

14    trial.

15               So as far as I'm concerned, I'd have a

16    quick hearing on it.  You may be right that -- that --

17    but the order doesn't basically -- doesn't fully say

18    that he's revoked the bond.  I mean, I think Judge

19    Sharp certainly could have revoked the bond.  He

20    didn't.  He just ordered him brought before me.

21               MR. SCHRADER:  If it's just a matter of

22    putting a witness on to establish that he had a trial

23    date set yesterday and he did not appear, I can do

24    that.

25               THE COURT:  That the -- that's the basis

1      of the warrant is failure to appear for a jury trial.

2                  MR. SCHRADER:  Sure.  Give me one moment,

3      Your Honor.

4                  THE COURT:  Sure.

5                  (Pause in proceedings.)

6                  THE COURT:  Mr. Gratton, I notice you're

7      holding your ear.  If you have any difficulty

8      understanding me, let me know and I'll be glad to

9      speak a little louder or repeat.

10                 MR. GRATTON:  Thank you, sir.

11                 MR. SCHRADER:  All right, Your Honor.

12     We'll call Special Agent Todd Stacy.

13                 THE COURT:  All right.

14                         **TODD STACY**

15     called as a witness, after having been first duly

16     sworn, testified as follows:

17                    **DIRECT EXAMINATION**

18     BY MR. SCHRADER:

19          Q.     Agent Stacy, good afternoon.

20          A.     Good afternoon.

21          Q.     Can you please state and spell your name

22     for the court reporter.

23          A.     Todd, T-o-d-d, Stacy, S-t-a-c-y.

24          Q.     Agent Stacy, where do you work?

25          A.     The Bureau of Alcohol, Tobacco, Firearms

1  and Explosives.

2       Q.    What is your title with ATF?

3       A.    Special agent.

4       Q.    And what are your duties as a special

5  agent?

6       A.    Investigate violations of federal law,

7  specifically firearms, narcotics and explosives

8  violations.

9       Q.    And in the course of your duties as an

10  agent, did you have the opportunity to investigate a

11  person named Paul Gratton?

12      A.    Yes.

13      Q.    Was that person actually charged with

14  federal firearms offenses?

15      A.    Yes.

16      Q.    Do you see Mr. Gratton here in the

17  courtroom today?

18      A.    Yes.  He's sitting at that table right

19  there, to the right of Mr. Hopkins.

20           MR. SCHRADER:  May the record reflect an

21  accurate identification of the defendant.

22           THE COURT:  All right.

23  BY MR. SCHRADER:

24      Q.    Agent Stacy, was that case you're talking

25  about set for trial on March 7, 2017?

1          A.     Yes.

2          Q.     And had you appeared at a number of

3    hearings in connection with that matter?

4          A.     Yes.

5          Q.     Yesterday when -- or on the 7th when

6    trial was scheduled to begin, it was yesterday, was

7    Mr. Gratton present for that trial?

8          A.     He was not.

9          Q.     Did you see Judge Sharp -- well, was

10   Judge Sharp present?

11         A.     Yes.

12         Q.     Did Judge Sharp issue a warrant for

13   Mr. Gratton's arrest at that time?

14         A.     Yes.

15         Q.     And then did you subsequently assist the

16   marshals in attempting to locate Mr. Gratton?

17         A.     Yes.

18              MR. SCHRADER:  Nothing further, Judge.

19              THE COURT:  Okay.  What happened when you

20   attempted to find him?

21              THE WITNESS:  We made contact with

22   Mr. Gratton.  He was not overly cooperative with the

23   marshals.  Marshals informed him that he needed to be

24   at the federal building this morning at 8:30.

25              THE COURT:  Okay.  Where was contact

1    made?

2              THE WITNESS:  At his residence in

3    Murfreesboro, Tennessee.

4              THE COURT:  Okay.  And the marshals

5    didn't attempt to execute the warrant?

6              THE WITNESS:  Due to officer safety

7    issues, no.

8              THE COURT:  All right.  Okay.  You may

9    question.

10             MR. GRATTON:  May I question?  Yes, thank

11   you.

12             THE COURT:  Yes.

13                   **CROSS-EXAMINATION**

14   BY MR. GRATTON:

15        Q.    What time did you try and get ahold of

16   me?

17        A.    I don't recall the exact time.  It was

18   the afternoon of March 7.

19        Q.    Okay.  And I answered straightaway or

20   called you back straightaway; is that right?

21        A.    I didn't speak to you personally.

22        Q.    Okay.  So there's no question that I was

23   very responsive once I knew somebody was trying to get

24   ahold of me?

25        A.    I was told that you did speak to the

1    marshals, as well as federal probation.

2           Q.    Okay.  And did the probation people and

3    the marshals both speak to me quickly, concisely and

4    was I responsive to their requests?

5           A.    I can't speak to the exact specifics of

6    conversations you had with those individuals.

7           Q.    Were you with the marshals when they

8    contacted me?

9           A.    One time I was, yes.

10          Q.    And was that in Rutherford County or from

11   here?

12          A.    That was in Rutherford County.

13          Q.    Do you have any idea why I didn't -- why

14   I was not here yesterday morning?

15          A.    I know what you told the marshals, yes.

16          Q.    Okay.  And what is that?

17          A.    You told the marshals you didn't know you

18   had court.

19          Q.    Not -- nothing else was mentioned to you?

20          A.    I believe you said you were sick and you

21   did not know that you had court on March 7.

22               MR. GRATTON:  Would you give me a moment,

23   sir.

24               THE COURT:  Certainly.

25

1  BY MR. GRATTON:

2        Q.    I'm going to pass you a document.

3        THE COURT:  Let the government counsel

4  see it first.

5        MR. GRATTON:  It's the only copy I've

6  got, sir.

7        THE COURT:  He'll give it back to you.

8  Just let him see it.

9  BY MR. GRATTON:

10       Q.    Do you see that document?

11       A.    Yes.

12       Q.    Can you describe it?

13       A.    This appears to be a note from a doctor

14 indicating that you, Paul Gratton, have been examined

15 or treated on this date for sinusitis.  Says

16 contagious, says may return to regular work/school

17 without limitations on 3-13-17.  And is signed 3-6-17

18 by John Byrne, MD.

19       Q.    Okay.  The moment you contacted me, is it

20 true that I contacted Ms. Haney or the pretrial

21 services?

22       A.    I can't speak for any contacts you had

23 with pretrial.

24       Q.    Was I a danger to anybody yesterday in

25 any way, shape or form?

1    A.    I don't know, sir.

2    Q.    Were you there when I met with the

3    marshal?

4    A.    When you met with the marshal, I wasn't

5    with the marshals, but I was in proximity, yes.

6    Q.    And there was no threatening behavior of

7    any sort?

8    A.    I can't speak to specifics.

9    Q.    How good is your eyesight?

10   A.    My eyesight?

11   Q.    Yes.

12   A.    I wear contacts.

13   Q.    Yeah.  So was I threatening in any way?

14   Simple question, yes or no?

15   A.    I can't say what was in your mind, sir.

16   I can say what I saw.  Didn't appear that you were

17   being overly cooperative with the marshals.

18             MR. GRATTON:  Can you ask the agent to

19   hand the note to (inaudible).

20             Your Honor, that note is from the doctor.

21             THE COURT:  All right.

22             MR. GRATTON:  And that's the reason I was

23   actually --

24             THE COURT:  Let me have it made a part of

25   the record.  I'll make a copy and return your

```
 1   original.
 2               MR. GRATTON:  I believe that you'll find
 3   if Ms. Haney -- she has some additional documentation
 4   similar to that also.
 5               THE COURT:  Okay.
 6               MR. GRATTON:  One moment, sir.
 7               THE COURT:  Okay.  We'll make that
 8   Defense 1.
 9               (Defense Exhibit No. 1 was admitted.)
10               THE COURT:  Let me make a copy and give
11   the original back to Mr. Gratton.
12   BY MR. GRATTON:
13       Q.    What officer safety issues that you
14   brought up do you believe were important?
15       A.    When the marshals contacted me, based on
16   what I saw, you refused to get out of the passenger
17   side of the vehicle and receive paperwork from the
18   marshals.  The marshals didn't know what was in the
19   vehicle, didn't know what you possibly had on your
20   person, didn't know what was going through your mind.
21       Q.    And you think that's some kind of
22   threatening behavior for safety, when both hands --
23   when both hands are visible?
24       A.    It was my understanding that both of your
25   hands were not always visible.
```

1          Q.    Well, I beg to differ with your opinion.

2    And I was very open with the -- with the two marshals.

3    They just --

4               MR. SCHRADER:  Objection as to form.

5               THE COURT:  I'm sorry?

6               MR. SCHRADER:  Objection as to form.

7               THE COURT:  Overruled.

8    BY MR. GRATTON:

9          Q.    There was a man who had a power of

10   attorney there.  Did you witness that?

11         A.    I did not.

12              MR. GRATTON:  I don't believe I have

13   anything further for this --

14              THE COURT:  All right.

15              MR. GRATTON:  -- for this man.

16              THE COURT:  All right.  Any further

17   direct -- redirect?

18              MR. SCHRADER:  Just briefly, sir.

19              THE COURT:  All right.

20                     **REDIRECT EXAMINATION**

21   BY MR. SCHRADER:

22         Q.    Agent Stacy, were you present for a

23   pretrial status hearing on March 2, 2017?

24         A.    Yes.

25         Q.    Would have been Thursday of last week?

1            A.     Yes, I was.

2            Q.     And was Mr. Gratton also present at that

3      hearing?

4            A.     Yes.

5            Q.     All right.  And have you ever seen that

6      note that he handed you earlier today?

7            A.     I have not.

8            Q.     Do you know anything about the doctor

9      whose name is listed on that note?

10           A.     About the doctor, no, I do not.

11           Q.     Can you vouch in any way as to whether

12     that document is authentic?

13           A.     I cannot.

14                  MR. SCHRADER:  Nothing further, Judge.

15                  THE COURT:  Okay.  You said you were at

16     the status conference on the 2nd?

17                  THE WITNESS:  Yes, sir.

18                  THE COURT:  Did you hear the matter being

19     set for trial?

20                  THE WITNESS:  Yes, sir.

21                  THE COURT:  And trial was set for?

22                  THE WITNESS:  March 7.

23                  THE COURT:  Okay.  All right.  You

24     mentioned something about a man with a power of

25     attorney or you asked about that.  Do you know

1    anything about that?

2              THE WITNESS:  After speaking to the

3    marshals, they indicated that Mr. Gratton did inform

4    them that the individual with him, that he had given

5    him power of attorney.  I did not personally hear him

6    say that or even see another individual from where I

7    was.

8              THE COURT:  Oh, okay.  All right.

9              Do you have any other questions you want

10   to ask him, Mr. Gratton?

11             MR. GRATTON:  Not this witness.

12             THE COURT:  Okay.  Thank you, sir.

13             THE WITNESS:  Thank you.

14             THE COURT:  Watch your step there.

15              *****WITNESS EXCUSED*****

16             THE COURT:  All right.  Government have

17   anything else, then?

18             MR. SCHRADER:  No, Your Honor.

19             THE COURT:  All right.

20             MR. GRATTON:  Your Honor, in the docket,

21   I bring to your attention the pretrial hearing where

22   the man who was helping me that day -- and I believe

23   that there is now a transcript been entered, the man

24   who was helping me with my hearing was actually

25   removed from the room.  So there was a point in time

1  maybe about 10 minutes into that hearing, where the

2  hearing took on its own life and I did not know what

3  was going on at that point.  It's quite clear in the

4  transcript, I believe.

5         THE COURT:  Okay.  Do we have a

6  transcript filed?  Do you want to print it out for me?

7         MR. GRATTON:  May I --

8         MR. SCHRADER:  I will say, Your Honor --

9  and I'm happy to argue whenever the Court's ready.  I

10  attached to the motion that I filed the transcript of

11  that hearing.

12         THE COURT:  Okay.  Well, unfortunately,

13  given the quick time here, the only thing I -- only

14  thing I've got is the arrest warrant.  I haven't had a

15  chance to read it yet.  I'm going to -- if -- I'm

16  going to get it printed out and then I can read it and

17  I've -- Mr. Gratton doesn't have a copy, he can have a

18  copy.

19         MR. GRATTON:  Your Honor, I'd like to --

20  if Ms. Haney -- if Kimberly Haney is present, I'd like

21  to ask her just a couple questions just to clarify

22  your record, if that's okay.

23         THE COURT:  She's here.  You can ask her.

24         MR. GRATTON:  Do you mind, Ms. Haney?

25

1                          **KIMBERLY HANEY**

2   called as a witness, after having been first duly

3   sworn, testified as follows:

4                      **DIRECT EXAMINATION**

5   BY MR. GRATTON:

6           Q.    Good afternoon.  Can you state your name

7   for the record.

8           A.    Kimberly Haney.

9           Q.    And what do you do?

10          A.    US Probation and Pretrial Services

11  Officer.

12          Q.    Okay.  And are you assigned to my case

13  here?

14          A.    Yes.

15          Q.    Okay.  Have you had any other issues,

16  other than what -- what Todd Stacy brought up

17  yesterday?

18          A.    Issues?  Can you clarify what you mean?

19          Q.    Well, have you had any problems?  Am I a

20  problem customer?

21          A.    Not that I'm aware of.

22          Q.    Do you remember about what time you got

23  hold of me yesterday?

24          A.    I'm not exactly sure what time, no.

25          Q.    Well, early afternoon?

1      A.    It was in the afternoon, but I'm not sure
2    what time.
3      Q.    Was I responsive to your needs?  Did I
4    get back to you immediately, speak to you, provide
5    documentation fairly quickly to what you'd asked me?
6      A.    Yes.
7      Q.    Okay.  Was there anything lacking in the
8    documentation I gave to you that you might need for
9    your job?
10     A.    There was nothing specific I needed for
11   my job.  You just offered to provide documentation
12   regarding your illness.
13     Q.    Okay.  And do you have any -- the
14   government's provided a document that says that they
15   believe I'm a flight risk.  You have -- you have two
16   things in your possession that would ensure I'm not a
17   flight risk.  What two things are those?
18     A.    You're referring to your passports?
19     Q.    Correct.
20     A.    Yes, I have them.
21     Q.    Okay.  And have I done anything other
22   than traveling internationally with the consent of the
23   Court, but have I ever left the criteria that you give
24   me to travel?
25     A.    No.

 1          Q.    Okay.  And I've always, at all times,

 2    made you aware, even if I'm going close to the border

 3    of where the district is?

 4          A.    As far as I'm aware, yes.

 5          Q.    Okay.  Would you have a problem with me

 6    continuing that relationship, if I give assurance to

 7    the Court of my appearance and some form of

 8    communication if, in fact, there was an issue?

 9          A.    I would not.

10          MR. GRATTON:  Okay.  Thank you,

11    Ms. Haney.

12          THE COURT:  Any cross?

13          MR. SCHRADER:  Just briefly, Your Honor.

14                    **CROSS-EXAMINATION**

15    BY MR. SCHRADER:

16          Q.    Ms. Haney, good afternoon.

17          A.    Good afternoon.

18          Q.    You've had a number of conversations with

19    Mr. Gratton; right?

20          A.    Yes.

21          Q.    And that's typically (inaudible)?

22          A.    Yes.

23          Q.    And the conversations have been

24    (inaudible)?

25          A.    Yes.

1       Q.      He's been lucid in those conversations?

2       A.      Yes.

3       Q.      Seems to know kind of what's going on;

4   right?

5       A.      Yes.

6       Q.      Aware of his case; correct?

7       A.      To my knowledge, yes.

8       Q.      And he's also filed a number of pleadings

9   on the docket; right?

10      A.      Yes.

11      Q.      Have you seen those at all?

12      A.      I have not seen them all, no.

13      Q.      Have you seen any of them?

14      A.      The more recent ones, no, I have not.

15      Q.      All right.  You've never had any

16  difficulty communicating with him; correct?

17      A.      Correct.

18      Q.      He's never expressed any trouble with his

19  hearing when he's talked to you; correct?

20      A.      He has mentioned once before regarding

21  his hearing, but not repeatedly.

22      Q.      And on that one occasion, what did he

23  say?

24      A.      He just asked me to speak up.

25      Q.      Was that conversation in your office?

```
 1          A.    Yes.
 2          Q.    All right.  On the 7th you called
 3    Mr. Gratton; right?
 4          A.    Correct.
 5          Q.    And you notified Mr. Gratton that there
 6    was a warrant out for his arrest; correct?
 7          A.    Incorrect.
 8          Q.    What did you notify him of?
 9          A.    I just let him know he missed court.  Was
10    he aware that the trial was set for yesterday, and
11    that he didn't appear.
12          Q.    Okay.
13          A.    But I never mentioned that there was an
14    arrest warrant issued for him.
15          Q.    Okay.  Just that he had missed his court
16    date; correct?
17          A.    Yes.
18          Q.    And he was then -- you made him aware at
19    that point that he'd missed that court date; right?
20          A.    Yes.
21          Q.    He didn't come in at that point to the
22    courthouse, did he?
23          A.    No.
24          Q.    Didn't come down to see you; correct?
25          A.    No.
```

1          Q.    Didn't ask which judge he should go back
2     and talk to about the court date, did he?
3          A.    No.
4          Q.    Did he provide you at that point with any
5     information about a doctor's appointment?
6          A.    He did.
7          Q.    And what was that about?
8          A.    He e-mailed me a document allegedly from
9     a physician that he went to see regarding his
10    diagnosis of sinusitis.
11         Q.    Ever heard anything about that before the
12    phone call where you told him that he'd missed a court
13    date?
14         A.    No.
15         Q.    That was the first time?
16         A.    Yes.
17         Q.    Did you ever talk to that doctor?
18         A.    No.
19         Q.    Not reached out at all to figure out
20    whether that was genuine in any way?
21         A.    No, I have not.
22         Q.    All right.  And you know that Mr. Gratton
23    has had this trial date pending for six months or so
24    now; right?
25         A.    I can't say that I've known for that

1    long.

2         Q.    Well, this case was set for trial in

3    October.  You know that Mr. Gratton knows that it's

4    been set for a while; correct?

5         A.    Yes.

6         Q.    You see him on a weekly basis?

7         A.    Monthly.

8         Q.    Monthly.

9         A.    It's once per month.

10        Q.    Okay.  And I presume when you meet with

11   him you explain to him how important it is to comply

12   with conditions of pretrial release; right?

13        A.    Yes.

14        Q.    And how important it is obviously for him

15   to show up for his trial; right?

16        A.    Yes.

17        Q.    Never in any of those meetings have you

18   ever had an indication that Mr. Gratton didn't know

19   that he had a trial in March of 2017; isn't that

20   right?

21        A.    Can you repeat that?

22        Q.    Sure.  There's never been any indication

23   in any of the conversations or meetings you've had

24   with him that there was any doubt in his mind about

25   the fact that he had a trial scheduled in March of

1    2017?

2          A.    I can't speak for certainty on that.  He

3    knew about the pretrial conference hearing, but I

4    can't say that he actually knew about the trial

5    because I believe -- and I could be wrong -- he had a

6    status hearing or something set before and it was

7    rescheduled, so the dates were confused.  But I can't

8    say with certainty he actually knew about the trial

9    date, but he knew something was going on this month.

10         Q.    Okay.  He knew that -- well, he knew that

11   he had that status date, the one that he attended;

12   correct?

13         A.    Yes.

14         Q.    Did you go to that status date as well?

15         A.    I did not.

16         Q.    Of course, he appeared.  And he's known

17   that this case has been around, obviously, for a

18   little while; correct?

19         A.    Yes.

20         Q.    Fair to describe him as a defendant who's

21   interested in his case?

22         A.    Very interested in his case.

23         Q.    All right.  And likes to be informed and

24   aware of what's going on in his case?

25         A.    Yes.

1                MR. SCHRADER:  Nothing further.

2                MR. GRATTON:  May I redirect?

3                THE COURT:  Certainly.

4                **REDIRECT EXAMINATION**

5  BY MR. GRATTON:

6       Q.    Trying not to belabor, Your Honor.  Sorry

7  if I...

8                Did you ask me to drive to Nashville

9  yesterday once I explained the status -- how I was?

10      A.    Yes.

11      Q.    Okay.  Did I explain to you why I did not

12  drive?

13      A.    Yes.

14      Q.    Okay.  Can you tell the Court, please.

15      A.    You said that you were contagious and

16  that you were not -- your doctor told you not to be

17  around people.

18      Q.    Okay.  Did I mention anything about not

19  driving myself in regards to dizziness or an

20  imbalance?

21      A.    You did mention that you could not drive

22  yourself, but you did not say why you could not drive

23  yourself.

24      Q.    Fair enough.

25                MR. GRATTON:  Apologize for (inaudible),

1    Your Honor.

2              THE COURT:  That's all right.

3    BY MR. GRATTON:

4         Q.    You said that there was a pretrial

5    hearing on -- that we were all aware of on the 7th --

6    on the 2nd of March.  And were you aware or do you

7    recall in any way anything that was asked to extend

8    that date so that there could be additional help for

9    the defense?

10        A.    I do not recall.

11        Q.    You don't recall, okay.  Do you have any

12   problem with me being -- continuing under your care

13   pretrial?

14        A.    I do not.

15        Q.    And you don't see me as a flight risk?

16        A.    I do not.

17             MR. GRATTON:  Okay.  Thank you,

18   Ms. Haney.

19             Your Honor, I'm okay with Ms. Haney.

20             THE COURT:  All right.  Thank you, ma'am.

21              *****WITNESS EXCUSED*****

22             THE COURT:  Give me just a moment.  I'm

23   reading the transcript.

24             (Pause in proceedings.)

25             THE COURT:  All right.  Yes.

1          MR. GRATTON:  If I may, Your Honor, one

2    other thing, Your Honor.  Your Honor, that's all the

3    witnesses.  I do have something else, if that will

4    assist the Court in making a decision.

5          THE COURT:  I'll look at whatever you

6    got.

7          MR. GRATTON:  If we're to go to trial

8    tomorrow, I'm okay with that.  And I understand that a

9    lot of restrictions have been placed upon the defense,

10   but I would ask for the leniency of the Court to be

11   able to actually prepare my case, and I can't do that

12   if I'm incarcerated.  And my papers are at home.

13          I have no problem contacting Ms. Haney

14   or -- by whatever means she chooses to ensure I'm here

15   in the morning.  And I'm not sure if Ms. Haney may

16   even -- a quick yes-or-no answer if she would have a

17   problem with me being at home this evening so I can

18   actually prepare a defense for the trial.  I'm unable

19   to do so in the accommodations I've been enjoying the

20   last few hours.

21          THE COURT:  All right.  Mr. Schrader?

22          MR. SCHRADER:  May I be heard, Judge.

23   This case was set for trial Tuesday, so I appreciate

24   that Mr. Gratton is now ready to go to trial tomorrow.

25   But, frankly, this sort of behavior is consistent with

1    the way that he has acted during the course of these

2    proceedings.  This case has been set for trial for

3    months.  He's had multiple lawyers in this case who

4    have been relieved from his service at his own

5    choosing.

6              We could have started this trial on

7    Tuesday when he knew he was supposed to be here.  He

8    didn't show up.  I would note that in my motion I

9    included the fact that his son, who was subpoenaed,

10   did appear.

11             And when the marshals tried to ask his

12   son where Mr. Gratton was -- first of all, his son

13   wouldn't say how he got there.  He just said that

14   someone who was supposed to be in the area had dropped

15   him off.  But he also provided a --

16             THE COURT:  Is this in the nature of an

17   offer of proof or what?

18             MR. SCHRADER:  It is.  It's attached to

19   my motion.

20             THE COURT:  Okay.

21             MR. SCHRADER:  But it's relevant.

22             THE COURT:  I tell you what, let me get a

23   copy of the motion.  Unfortunately, I don't have a

24   copy of your motion.

25             MR. SCHRADER:  I'm sorry, Judge.

```
 1              THE COURT:  You know, it gets filed on
 2   ECF and I've got other things, I don't rush to my
 3   computer and print stuff out.  So you need to bring a
 4   copy with you.
 5              MR. SCHRADER:  I don't know that I have a
 6   clean copy.
 7              THE COURT:  Okay.  And I can print it
 8   out.  I just need to know that I've got stuff to print
 9   out.  Thanks.
10              MR. SCHRADER:  When --
11              THE COURT:  All right.  Now, having said
12   that, give me a chance to read it.
13              (Pause in proceedings.)
14              THE COURT:  That's the transcript.  I've
15   read the transcript.  Okay.  And this is -- you've
16   attached two documents, 170-2, looks like page 1 and
17   2.  And one that says I've appeared.
18              So his son was, what, subpoenaed as a
19   witness?
20              MR. SCHRADER:  He was.  The government
21   subpoenaed him as a witness.  He appeared that day.
22              THE COURT:  All right.
23              MR. SCHRADER:  His father has custody of
24   his son, who showed up with this note --
25              THE COURT:  How old is his son?
```

1          MR. SCHRADER:  He's, I believe, 16.

2          THE COURT:  16.

3          MR. SCHRADER:  16 or 17.

4          THE COURT:  All right.

5          MR. SCHRADER:  But anytime they would ask

6    him about his father in order to maybe get some

7    information about where he was located, he provided

8    this note.  It was (inaudible) by his father.  It's in

9    exactly the same style that everything else

10   Mr. Gratton has filed with the Court.

11         So at a minimum, Mr. Gratton knew that

12   his son had been subpoenaed to appear for his trial

13   date.  Mr. Gratton also filed -- this is also on ECF

14   at the end of that hearing, the hearing where he

15   refused to answer any questions from Judge Sharp and

16   just tried to write out notes and hand them up to

17   Judge Sharp -- a notice of withdrawal, indicating that

18   he didn't see any benefit to his being in the court

19   any longer, which we took, frankly, as a, you know,

20   suggestion that he may not be there on the 7th.

21         And then for whatever reason, even though

22   he had ample notice that he was supposed to be there

23   on March 7, he didn't show up.  The marshals went out

24   looking for him.  You heard a little bit of testimony

25   about how that proceeded.  And eventually Mr. Gratton

1    showed up.  But he doesn't get to just show up in

2    court whenever he would like.

3              And it's unfortunate for him that it's

4    going to be a little bit more difficult, given his

5    current situation, in terms of handling papers and

6    that sort of thing, but that's Mr. Gratton's fault.

7    That is not the government's fault.

8              In addition, it was my understanding,

9    through Mr. Hopkins, that Mr. Gratton was going to

10   have an associate of his go out today to get clothes

11   for tomorrow and to get his papers.  So this is the

12   first time that I'm hearing that apparently none of

13   that has happened.  I thought it was going to happen

14   and we'd have that issue resolved.

15             But, frankly, Judge, the way he's

16   conducted himself in connection with all these

17   proceedings, I mean, this is just another example of

18   the way he has flouted the Court.  Again, this is just

19   sort of the -- I guess, the final example of that,

20   deciding not to show up for trial at all.

21             We don't have any assurance at this point

22   that he's going to comply with any conditions this

23   Court is going to set.  We're taking a big chance, if

24   he's released today, to show up tomorrow.  He didn't

25   show up at his last trial date.

1          THE COURT:  All right.  Mr. Gratton, I'll

2    be glad to hear from you.

3          MR. GRATTON:  Your Honor, when I did

4    speak to the marshals yesterday, I asked them what the

5    nature of the requirement that they had, and they said

6    to be at Judge Sharp's room at 8:30 today, in the

7    morning.  And we set off at 7 o'clock this morning.  I

8    got a ride and I was maybe three minutes late because

9    the interstate was particularly bad.  Stayed in

10   contact with Ms. Haney the whole way up there.

11          I came, I appeared and I did as asked,

12   and I did so to the best of my abilities.  The

13   government has had 20 months playing around with me in

14   this case, and using various -- very coercive, in some

15   cases.  Communication of threats, against I and my

16   son.  There's a reason I've been cautious with my son.

17          And now that all the documentation has

18   hit the case, I barely had a few days to even go

19   through some of these documents to prepare a good

20   defense.  I understand that the deck is stacked

21   against a defendant in some regards, especially in

22   special materials like Jencks materials and the

23   refusal of the government to give up reliability and

24   credibility of witnesses and things of that nature,

25   which I asked for a long time ago.  All I'm asking for

1    is for you to speak with Ms. Haney and ask her if she

2    has any issues with me being home to prepare at least

3    some semblance of a defense for trial tomorrow.

4                    THE COURT:  Okay.  All right.

5                    MR. SCHRADER:  May I be heard, Judge?

6                    Frankly, it's not really even relevant to

7    the issue of detention, but I just want to make sure

8    the record is clear here.  We indicted Mr. Gratton in

9    March of 2016.  He originally got a public defender,

10   Mr. Shabazz.  The first trial date was continued at

11   the request of defense counsel.

12                   Then our trial date in October was

13   continued because Judge Campbell ordered a competency

14   evaluation.  We had to make sure that Mr. Gratton was

15   competent to stand trial and represent himself.  So to

16   the extent this has dragged out at all -- and frankly,

17   in the government's view, it hasn't -- that's been at

18   the request of Mr. Gratton or because of Mr. Gratton.

19                   And in terms of his requests for

20   additional discovery and that sort of thing, at the

21   pretrial conference, this was about a month ago now,

22   Mr. Gratton said he wanted to file a motion to

23   suppress.

24                   Judge Sharp permitted him to do that.

25   And instead of filing a motion to suppress related to

1    what he wanted to file, he filed 16 other motions,

2    including a couple of motions to suppress not related

3    to that issue.  Judge Sharp denied all of them.  He

4    denied 13 of them without even requiring a response

5    from the government.

6              So we've satisfied our obligations at

7    this point.  We're ready for trial.  We've been ready

8    for trial for a while.  And for Mr. Gratton to now

9    suggest that we've delayed the proceedings because

10   he's not ready for some reason is just at odds with

11   the facts and the way this case has proceeded.

12             THE COURT:  All right.  Thank you.

13             Mr. Gratton, anything else?

14             MR. GRATTON:  I'm not asking for any more

15   delays.  I'm just asking for some time with the papers

16   so I can be here in the morning and ready.  That's

17   all, Your Honor.

18             THE COURT:  Well, let me ask this:  Is it

19   possible if Mr. Hopkins is available that Mr. Hopkins

20   can go there and pick up your papers for you as elbow

21   counsel?  The problem, Mr. Gratton, is my dealings

22   with you have been pretty straightforward and I've let

23   you go to England I think three times during your

24   mother's illness and her death, and you returned as

25   required.

1      The problem I have now is that it's clear
2 from the transcript -- I mean, Judge Sharp set the
3 matter -- I mean, the transcript says when it was
4 going to start.  And if, in fact, you were ill and
5 that -- I don't discount that one way or the other,
6 but the -- the solution is not -- not to show up or
7 not to let the Court know.
8      The Court had witnesses here, they had 30
9 or 40 jurors here, and you simply didn't show up.  And
10 Judge Sharp's issued a warrant on that and has set the
11 trial to begin tomorrow.
12      Now, if you have -- you can file a motion
13 with -- and I'm not -- it's not in my jurisdiction to
14 set the district judge's trial date or when he starts
15 the trial.  If you have motions to delay or continue,
16 you need to file those and take those up with Judge
17 Sharp.
18      And I'll give you a piece of free advice.
19 As the old saying, free advice is worth what you pay
20 for it, but you've had some counsel.  Mr. Hopkins is
21 experienced counsel.
22      I'll admit, the last time I let --
23 authorized you to go to England, I was frankly very
24 concerned about the pleadings you were filing because
25 I've been -- I've been a prosecutor for a number of

years and dealt with a lot of criminal cases, but I
don't know where it came from or something, but with
all due respect, 99 percent of the materials you were
filing is just legal nonsense.  It sounds kind of
legal, but when you read it, it just -- it makes no
sense at all.  I'll give you that for what it's worth.

        And I had great reservations when I let
you go to England the last time, but your mother had
died and I thought it was appropriate to let you go.
And to your credit, you went and came back.  I think
there was an extension that I granted and you came
back.

        The problem is, at this point, you had a
court date yesterday and you didn't appear.  And under
the circumstances I'm going to have to order
detention, but I would -- from the government's side,
I would like to see if there's some way, to the extent
he's got materials, that some arrangements can be
made, either -- if Mr. Hopkins is available to have
them picked up.

        Otherwise you may have a motion for
continuance and Judge Sharp continues it.  I'm in no
position to grant a continuance in the matter.
Unfortunately, at this point, having -- having failed
to show up yesterday, I'm not in a position at this

1  point to authorize release, but I -- I would -- if

2  it's possible, I'd like to see a way that Mr. Gratton

3  can get his material.

4          Mr. Hopkins, I know you're elbow counsel,

5  and elbow counsel, as you pointed out, is an

6  uncomfortable position.  You're a lawyer without --

7  without speaking rights, I guess, to a certain extent.

8  But I don't know whether you're available to have

9  something picked up or to do it or not or whether

10 Mr. Gratton can tell you what he needs.

11         MR. HOPKINS:  Your Honor, the issue with

12 that would be obviously that the items are in

13 Mr. Gratton's home.

14         THE COURT:  Right.

15         MR. HOPKINS:  I'm certainly not

16 comfortable going through a man's house, going through

17 his personal possessions trying to find papers and

18 documents.  I can only speak to my office and my home.

19 If someone were looking for the contents of a

20 particular file, it would be in 500 different places.

21         So I can provide no assurance that even

22 if I had that consent and were able to get access to

23 what I'm sure is his locked house that I could

24 competently find all the documents he's requesting.

25         I can let the Court know that I did

1  contact someone on Mr. Gratton's behalf at his request
2  and requested that person to get those documents, who
3  advised that they would do their best --
4              THE COURT:  Okay.
5              MR. HOPKINS:  -- to try to do that.
6              THE COURT:  I can -- Mr. Hopkins, I can
7  understand your position.  Again, I don't know what
8  Mr. -- you know, what the conditions of the files are
9  at Mr. Gratton's house, whether they're in one nice
10  box, file cabinet.
11              If so, then if he's got someone there
12  that he can talk to, I can -- I can certainly direct
13  that the marshals allow him to -- I hope this
14  individual can be contacted by phone to speak to the
15  person about picking up the materials he needs and see
16  about getting them.
17              So I would direct the marshals to allow
18  him to contact this person, either through you or
19  through someone else, to see if he can do it.  And
20  then I would say, Mr. Gratton, in the morning, when
21  the trial starts, you can make motions for whatever
22  motions you feel appropriate with Judge Sharp.
23              I would -- it's -- again, it's free
24  advice, but I would -- I would urge you to carefully
25  consider whether you really want to represent yourself

1    or whether you'd be better off with an attorney, but

2    that -- that decision is not mine, it's yours.  But

3    there's an old saying that someone that -- a lawyer

4    that represents himself has a fool for a client, and

5    that -- that applies to pro se probably as much, as

6    not more.  So I leave that with you.

7              I'm going to have to order detention in

8    the matter.  I will direct the marshal to allow you as

9    far as practical or through Mr. Hopkins to see if you

10   can have someone there to bring you the materials and

11   you can take up whatever motions you have, then, for

12   continuance with Judge Sharp in the morning, but

13   that's -- that's his jurisdiction, not mine.

14             MR. HOPKINS:  Your Honor, to that end, I

15   have copies of the documents that have been filed

16   today, I brought the government and myself on behalf

17   of Mr. Gratton.  He's requested paper so he can make

18   notes tonight, because obviously I don't know what

19   facility he'll be going to and when he'll be getting

20   there tonight.

21             THE COURT:  All right.  Let's see if we

22   can give him a couple legal pads.

23             MR. HOPKINS:  I've got a legal pad here.

24             THE COURT:  Oh, okay.

25             MR. HOPKINS:  And an ink pen as well.

1  Obviously it will depend on the jail if he can have

2  those when he gets there.  But if the Court will

3  allow --

4              THE COURT:  They'll probably want him to

5  use a pencil up at the jail.  I don't know that -- I'm

6  not going to start telling the marshal how to run his

7  office, but, I mean --

8              MR. HOPKINS:  (inaudible).

9              THE COURT:  He clearly -- he clearly

10  needs -- he clearly needs a writing instrument.

11              MR. HOPKINS:  He does.  So I've got the

12  documents that I'll provide to him now.

13              THE COURT:  All right.  The marshal will

14  probably want to just --

15              MR. HOPKINS:  Sure.

16              THE WITNESS:  -- just check them.  Not to

17  read them, but to make sure there's nothing...  Yeah.

18              MR. HOPKINS:  Thank you, Judge.

19              THE COURT:  All right.  We'll be in

20  recess, then.

21              **\*\*\*END OF ELECTRONIC RECORDING\*\*\***

22

23

24

25

1                    **REPORTER'S CERTIFICATE**

2

3           I, Roxann Harkins, Official Court Reporter

4    for the United States District Court for the Middle

5    District of Tennessee, in Nashville, do hereby

6    certify:

7           That I transcribed from **electronic recording**

8    the proceedings held on March 8, 2017, in the matter

9    of UNITED STATES OF AMERICA v. PAUL GRATTON, Case No.

10   3:16-cr-0043; that said proceedings in connection with

11   the hearing were reduced to typewritten form by me;

12   and that the foregoing transcript is a true and

13   accurate transcript of said proceedings.

14

15           This is the 19th day of April, 2017.

16

17                    s/ Roxann Harkins_____
                      ROXANN HARKINS, RPR, CRR
18                    Official Court Reporter

19

20

21

22

23

24

25